# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **INTERNATIONAL WATCHMAN INC.,** | **CIVIL ACTION NO. 1:23-CV-2396** |
| Plaintiff, | |
| vs. | **JUDGE DAVID A. RUIZ** |
| **REEDS JEWELERS, INC., ET AL.,** | **MAGISTRATE JENNIFER D. ARMSTRONG** |
| Defendants. | |

## DEFENDANT REEDS JEWELERS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2), (3), AND (6)

**TABLE OF CONTENTS**

I. BACKGROUND ........................................................................................................... 2

    A. Reeds' Business and NATO-Style Watches ............................................................ 2

    B. Plaintiff and Related Proceedings. ........................................................................... 3

    C. Reeds Has No Presence In Ohio. .............................................................................. 4

II. LEGAL STANDARD .................................................................................................... 5

    A. Personal Jurisdiction ................................................................................................. 5

    B. Venue ........................................................................................................................ 5

    C. Failure To State a Claim ........................................................................................... 6

III. ARGUMENT .................................................................................................................. 6

    A. The Court Lacks Personal Jurisdiction Over Reeds. ................................................ 6

    B. Venue is Improper in this District. ............................................................................ 9

    C. Plaintiff Fails To State a Claim, Because Reeds' Use of "NATO" Refers To The North Atlantic Treaty Organization ............................................................... 10

IV. CONCLUSION ............................................................................................................ 13

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*513 Ventures, LLC v. PIV Enterprises, Inc.*,
  No. 1:11-CV-573, 2012 WL 995277 (S.D. Ohio Mar. 23, 2012)..............................5

*Aerodyne Env't, Inc. v. Keirton, Inc.*,
  628 F. Supp. 3d 744 (N.D. Ohio 2022)........................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................................6

*Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*,
  692 F.3d 469 (6th Cir. 2012) .........................................................................................8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)......................................................................................................6, 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)..........................................................................................................6

*Gov't Cont. Servs., Inc. v. eLegalSupply.com, LLC*,
  No. 5:20-CV-01480, 2021 WL 83398 (N.D. Ohio Jan. 11, 2021) ...........................8

*Hensley Mfg. v. ProPride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) ..........................................................................6, 10, 11

*In Re Int'l Watchman, Inc.*,
  No. 87302907, 2021 U.S.P.Q.2d 1171, 2021 WL 5755146 (Nov. 30, 2021).....4, 12

*Int'l Watchman, Inc. v. Barton Watchbands Holdco, LLC*,
  No. 1:19-CV-02310 (N.D. Ohio filed Oct. 3, 2019)....................................................3

*Int'l Watchman, Inc. v. The NATO Strap Co.*,
  No. 1:13-CV-01986 (N.D. Ohio filed Sept. 9, 2013) ..................................................3

*Int'l Watchman, Inc. v. Wrist and Style, Inc.*,
  No. 1:22-CV-01281 (N.D. Ohio filed July 20, 2022)..................................................3

*J.M. Smucker Co. v. Hormel Food Corp.*,
  526 F. Supp. 3d 294 (N.D. Ohio 2021)........................................................................5

*LeafFilter N., LLC v. Home Craft Builders, Inc.*,
    487 F. Supp. 3d 643 (N.D. Ohio 2020) ..................................................................................8

*Mobile Conversions, Inc. v. Allegheny Ford Truck Sales*,
    No. 1:12CV369, 2012 WL 12893476 (S.D. Ohio Oct. 15, 2012) ........................................7, 9

*Morris v. Wise*,
    No. 1:19 CV 2467, 2020 WL 1000010 (N.D. Ohio Mar. 2, 2020) ..........................................13

*Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.*,
    603 F. Supp. 3d 561 (N.D. Ohio 2022) ..................................................................................5

*Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*,
    687 F. App'x 429 (6th Cir. 2017) ..............................................................................10, 11, 13

*Rupp v. Courier-J., Inc.*,
    839 F. App'x 1003 (6th Cir. 2021) ..............................................................................2, 10, 11

*Smith v. Swaffer*,
    566 F. Supp. 3d 791 (N.D. Ohio 2021) ..................................................................................5

*Sullivan v. LG Chem, Ltd.*,
    79 F.4th 651 (6th Cir. 2023) .................................................................................................5, 9

*Tradesmen Int'l, LLC v. Tradesmen Staffing, LLC*,
    No. 5:15-CV-1368, 2017 WL 2620660 (N.D. Ohio June 16, 2017) ........................................8

*Zoya Co. v. NIOS, Inc.*,
    No. 1:13-CV-00780-DCN, 2013 WL 4511922 (N.D. Ohio Aug. 23, 2013) ............................8

**Statutes**

28 U.S.C. § 1331 ...............................................................................................................................5

28 U.S.C. § 1391(b)(2) ....................................................................................................................9

28 U.S.C. § 1400(b) ........................................................................................................................9

15 U.S.C. § 1125(a) ........................................................................................................................1

Ohio Rev. Code § 4165.02 *et seq.* ..................................................................................................1

Ohio Rev. Code § 2307.382(C) ......................................................................................................6

Plaintiff International Watchman, Inc. ("Plaintiff" or "IWI") brought this action against Defendant Reeds Jewelers, Inc. ("Defendant" or "Reeds") alleging claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and state law unfair competition, Ohio Unfair Competition Ohio Rev. Code § 4165.02 *et seq*. Dkt. 5 (First Amended Complaint) ("FAC"). The complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(2), (3), and (6).

***First***, the Court lacks personal jurisdiction over Reeds and venue is improper in this District. Reeds is incorporated in North Carolina, headquartered in North Carolina, and focuses its business on the southeastern part of the United States, not Ohio. Declaration of William D. Reinger at ¶¶ 3-5, 8-9 ("Reinger Decl."). Reeds has no physical locations in Ohio and does nothing to specifically target Ohio customers. *Id.* at ¶¶ 4, 7-9 12-13. The alleged basis for personal jurisdiction is Reeds' operation (from North Carolina) of a generally accessible e-commerce website. *See* FAC ¶¶ 17-29. But in the last four years (2020-2023), Reeds has made only ***one*** online sale of an allegedly infringing product to only ***one*** customer in Ohio. Reinger Decl. at ¶ 15. The sale was for less than $300, representing less than 0.2% of all Reeds revenue from those products. *Id.* That is insufficient to establish personal jurisdiction or venue.

***Second***, even if the Court had jurisdiction over Reeds, Plaintiff fails to state a claim. Plaintiff asserts that it has a valid trademark in the word "NATO" even though the U.S. Patent and Trademark Office has rejected its related trademark registrations on the obvious grounds that "NATO" refers to the North Atlantic Treaty Organization (the "Treaty Organization"), not Plaintiff. *See* U.S. Trademark Application Serial Nos. 87302907, 87302891, 87302892 (filed Jan. 16, 2017). Here, the single advertisement Plaintiff attaches to its complaint clearly refers to a style of watchband used by militaries of the Treaty Organization. *See* Dkt. 5-2. These NATO watchbands are made and sold by many companies and long pre-date Plaintiff or its purported

mark. As shown in the Reeds advertisement attached to the FAC, the allegedly infringing products clearly identify the *manufacturer* as the source of the goods. *Id.*

As the Sixth Circuit put it in a case about trademarks for baked goods, "Derby Pie" is both "shorthand for chocolate nut pie" and (apparently) a trademarked phrase. But when a defendant's use of "'Derby pie' simply informs the reader of the type of pie" and does not refer to "*the* DERBY-PIE®," the complaint must be dismissed under Rule 12(b)(6). *Rupp v. Courier-J., Inc.*, 839 F. App'x 1003, 1008 (6th Cir. 2021) (emphasis in original). Here, Reeds' advertisements refer to *the* NATO, but Plaintiff is not *the* NATO. Plaintiff is an entity that (according to its trademark registration) first used the word "NATO" in 2003, long after NATO or NATO-style watches came into existence.

## I. BACKGROUND

### A. Reeds' Business and NATO-Style Watches

Reeds, a North Carolina corporation, headquartered in Wilmington, North Carolina, is a jewelry retailer that operates primarily in the southeastern part of the United States. Reinger Decl. at ¶¶ 3-5, 8-9. Among many other products, Reeds sells watches and watch accessories, like watch straps. *Id.* at ¶ 14.

The militaries in the Treaty Organization have long used a style of watch strap that has become known as a "NATO" watch strap. The Treaty Organization itself has recognized this trend:

> In recent years, popularity over the simple, yet iconic, stainless steel watch bracelet with customisable stripes has been all the buzz in the watch industry. … So, while the NATO strap is not actually a NATO-branded strap, it is an important article of clothing that was used by forces of a NATO member country.
>
> …

>Beyond aesthetic, the NATO straps worn by civilians today retain the same appeal to durability and practicality as in its design at the outset.[1]

Like many other jewelers, Reeds sells NATO-style watches and watch straps manufactured by multiple companies, including Hamilton, Bulova, and Omega ("NATO-style Products"). Reinger Decl. at ¶ 14. As this case (with four other defendants) shows, many companies sell these types of watches and watch straps.

Reeds' advertisements attached to the FAC clearly state the manufacturer of the watches, OMEGA, and refer to the military origins of the NATO-style, as commonly used in the watch industry: "OMEGA's NATO-inspired straps have been influenced by some particularly robust and storied ancestors and can trace their earliest origins to the Second World War." Dkt. 5-2.

### B. Plaintiff and Related Proceedings.

Plaintiff is an entity that purports to sell "NATO" branded products, but offers its purported "NATO" mark "for lease in numerous product Classifications."[2] Plaintiff has filed numerous mass lawsuits relating to its purported trademark rights in the word "NATO." *See, e.g.*, *Int'l Watchman, Inc. v. The NATO Strap Co.*, No. 1:13-CV-01986 (N.D. Ohio filed Sept. 9, 2013); *Int'l Watchman, Inc. v. Barton Watchbands Holdco, LLC*, No. 1:19-CV-02310 (N.D. Ohio filed Oct. 3, 2019); *Int'l Watchman, Inc. v. Wrist and Style, Inc.*, No. 1:22-CV-01281 (N.D. Ohio filed July 20, 2022).

A trademark examiner at the U.S. Patent and Trademark Office recently rejected multiple applications from Plaintiff for related "NATO" marks. *See* U.S. Trademark Application Serial Nos. 87302907, 87302891, 87302892 (filed Jan. 16, 2017). On appeal, the U.S. Trademark Trial

---

[1] Exhibit 1 (*The NATO Strap: More Than A Fashion Statement*, North Atlantic Treaty Organization, https://www.nato.int/cps/en/natohq/declassified_149972.htm (last visited Mar. 9, 2024)).

[2] *Leasing*, International Watchman, Inc., https://www.internationalwatchman.com/leasing (last visited Mar. 7, 2024).

-3-

and Appeal Board ("TTAB") affirmed the examiner. *In Re Int'l Watchman, Inc.*, No. 87302907, 2021 U.S.P.Q.2d 1171, 2021 WL 5755146, at *1 (Nov. 30, 2021). The TTAB found that "NATO is a well-recognized acronym for the North Atlantic Treaty Organization." *Id.* at *6. The TTAB further concluded that "Consumers would view Applicant's mark as pointing 'uniquely and unmistakably' to" the Treaty Organization, and not to Plaintiff. *Id.* Plaintiff did not further appeal the TTAB's decision.

      C.      **Reeds Has No Presence In Ohio.**

Reeds does not have any physical presence in Ohio. Reinger Decl. at ¶¶ 4-5, 7-9. Reeds does not have any offices, facilities, or retail locations in Ohio. *Id.* at ¶ 4. Reeds does not own any real property, inventory, or bank accounts in Ohio. *Id.* at ¶ 7. Reeds does not have any agents, officers, or directors in Ohio. *Id.* at ¶ 5. Reeds has one remote employee who chooses to live in Ohio for personal reasons. *Id.* at ¶ 6. That employee has no responsibility for the products at issue. *Id.* Reeds does not target advertising specifically at Ohio.[3] *Id.* at ¶ 13.

The majority of Reeds' business is conducted through its brick and mortar retail locations, of which (to repeat) there are none in Ohio. *Id.* at ¶ 9. Relevant here, Reeds also sells through its website, which is available to all people with internet access, regardless of location. *Id.* at ¶ 10. Reeds' website was not created for and is not specifically directed to Ohio residents. *Id.* at ¶ 12. Reeds' website is controlled from North Carolina by Reeds' employees there. *Id.* at ¶ 11.

From 2020-2023, Reeds had only **one** sale of NATO-style Products shipped to Ohio, generating $296.25 in revenue. *Id.* at ¶ 15. **Ohio accounts for less than 0.2% of Reeds' total sales of NATO-style Products**. *Id.*

---

[3] Reeds uses Google and other online advertising platforms which, on information and belief, may take into account a user's location, but Reeds has no control over that and does not do anything to target Ohio residents in its advertising. *Id.* at ¶ 13.

## II. LEGAL STANDARD

### A. Personal Jurisdiction

"Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving the court's jurisdiction over every defendant." *Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.*, 603 F. Supp. 3d 561, 566 (N.D. Ohio 2022). "To assert personal jurisdiction over a defendant, a federal court with subject matter jurisdiction pursuant to either 28 U.S.C. § 1331 or § 1332 must find that (1) defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction will not deny defendant due process." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 299-300 (N.D. Ohio 2021) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991); *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). When a defendant disputes jurisdictional pleadings with evidence, as Reeds does here, the Plaintiff "may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (quoting *Peters Broad. Eng'g, Inc. v. 24 Cap.*, LLC, 40 F.4th 432, 437-38 (6th Cir. 2022)).

### B. Venue

"On a motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper." *Smith v. Swaffer*, 566 F. Supp. 3d 791, 802 (N.D. Ohio 2021) (quoting *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)). "Dismissal for improper venue is appropriate when the plaintiff has not asserted that any event, act, or omission upon which its claims are based occurred in its chosen forum." *513 Ventures, LLC v. PIV Enterprises, Inc.*, No. 1:11-CV-573, 2012 WL 995277, at *5 (S.D. Ohio Mar. 23, 2012).

### C. Failure To State a Claim

To survive a Rule 12(b)(6) motion to dismiss, there must be sufficient facts to "raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Mere conclusions "are not entitled to the assumption of truth" instead, "legal conclusions . . . must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Reeds.

#### 1. Ohio Long Arm Statute

Ohio's long-arm statute provides that a court may exercise personal jurisdiction "over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). Accordingly, Reeds focuses on the reasons that an exercise of personal jurisdiction here is inconsistent with the United States Constitution.

#### 2. Federal Due Process

The Supreme Court has recognized two types of personal jurisdiction: "general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). A court possessing general jurisdiction over a defendant may "hear any and all claims against" it. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (cleaned up).

### a. *The Court lacks general jurisdiction over Reeds.*

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction there. *Daimler*, 571 U.S. at 137. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction" and the only ones the Supreme Court has ever recognized. *Id.* (cleaned up). Here, Plaintiff pleads that Reeds is a North Carolina corporation and that its principal place of business is in North Carolina. Accordingly, the Court lacks general personal jurisdiction over Reeds.

### b. *The Court lacks specific jurisdiction over Reeds.*

The Sixth Circuit applies a three-part test for specific personal jurisdiction:

> (1) the defendant purposefully avails himself of the privilege of acting or causing a consequence in the forum State; (2) the cause of action arises from the defendant's activities there; and (3) the defendant's acts or the consequences of those acts have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Aerodyne Env't, Inc. v. Keirton, Inc.*, 628 F. Supp. 3d 744, 751-52 (N.D. Ohio 2022) (citing *Bird*, 289 F.3d at 874). Plaintiff cannot satisfy any of these elements, let alone all three.

#### i. *Plaintiff cannot satisfy the purposeful availment test.*

Simply stated, Reeds does not affirmatively try to do anything in Ohio. The only Reeds activity that Plaintiff claims has any effect on Ohio at all is Reeds' generally accessible website, from which Ohio residents may occasionally make a purchase.[4] But that is not enough to meet the purposeful availment prong.

"As the Sixth Circuit has explained, the mere availability of a website falls short of purposeful availment." *Mobile Conversions, Inc. v. Allegheny Ford Truck Sales*, No. 1:12CV369,

---

[4] *See, e.g.*, FAC ¶¶ 17 ("Reed[s] sells products through its website"), 18 (such online sales "cause[] confusion in the marketplace"), 19 (Reeds "uses the mark 'NATO' on its online store"), 22 (Reeds advertises its "products with the 'NATO' mark across the internet").

-7-

2012 WL 12893476, at *3 (S.D. Ohio Oct. 15, 2012) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)). "[P]urposeful availment requires 'something more' than the operation of a generally accessible, interactive commercial website reachable from the forum." *Tradesmen Int'l, LLC v. Tradesmen Staffing, LLC*, No. 5:15-CV-1368, 2017 WL 2620660, at *5 (N.D. Ohio June 16, 2017) (quoting *Cap. Confirmation, Inc. v. AuditConfirmations, LLC*, No. 3:09-0412, 2009 WL 2823613, at *9 (M.D. Tenn. Aug. 28, 2009)); *see also Gov't Cont. Servs., Inc. v. eLegalSupply.com, LLC*, No. 5:20-CV-01480, 2021 WL 83398, at *6 (N.D. Ohio Jan. 11, 2021) ("[Plaintiff's] claim that [defendant's] website is open to customers nationwide, and therefore Ohio, cannot satisfy the requirement of purposeful availment"); *LeafFilter N., LLC v. Home Craft Builders, Inc.*, 487 F. Supp. 3d 643, 649 (N.D. Ohio 2020) ("The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an 'attenuated' contact that falls short of purposeful availment." (quoting *Neogen*, 282 F.3d at 890)).

        ii.    Plaintiff's claims do not "arise" from Reeds conduct in Ohio.

Even if Plaintiff could show that Reeds has substantial business in Ohio (which it cannot), Plaintiff must also show that its "cause of action arises from" whatever business Reeds does in Ohio. *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 472 (6th Cir. 2012). Plaintiff cannot do that. From 2020-2023, Reeds had only **one** sale of NATO-style Products shipped to Ohio, generating $296.25 in revenue. Reinger Decl. at ¶ 15. **Ohio accounts for less than 0.2% of Reeds' total sales of NATO-style Products**. *Id.*

This *de minimis* single sale in Ohio also further shows that Plaintiff cannot meet the purposeful availment prong. *See Zoya Co. v. NIOS, Inc.*, No. 1:13-CV-00780-DCN, 2013 WL 4511922, at *4 (N.D. Ohio Aug. 23, 2013) ("This Court agrees with Defendant that it is unreasonable to exercise jurisdiction over Defendant in Ohio based on the singular internet sale

for a trademark infringement claim under the circumstances of this case."); *Mobile Conversions, Inc.*, 2012 WL 12893476, at *4 (finding that delivery of single item to Ohio was insufficient to establish personal jurisdiction over the defendant).

> iii. Reeds has no substantial contacts in Ohio to make specific jurisdiction fair.

Lastly, courts "consider whether exercising personal jurisdiction over [the defendant] would be reasonable, i.e., whether it would comport with traditional notions of fair play and substantial justice." *Sullivan*, 79 F.4th at 674 (internal quotations omitted) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267-68 (6th Cir. 1996)). Here, Reeds has no presence in Ohio and does nothing to target Ohio. *See* Reinger Decl. at ¶¶ 4, 7-10, 12-13. Reeds only relevant contact with Ohio *is a single sale* via a website accessible by anyone anywhere in the world. *Id.* at ¶¶ 10, 15. In no sense would the exercise of personal jurisdiction in such circumstances "comport with 'traditional notions of fair play and substantial justice.'" *Sullivan*, 79 F.4th at 674 (quoting *CompuServe, Inc.*, 89 F.3d at 1268).

**B. Venue is Improper in this District.**

Plaintiff asserts that venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and/or 28 U.S.C. § 1400(b). *See* FAC ¶ 9. Neither provides a basis for venue.

First, § 1400(b) applies to patent infringement actions, not trademark infringement claims or state law claims. Accordingly, it does not provide a basis for venue here.

Second, § 1391(b)(2) provides for venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." As described above, no substantial part of the facts underlying Plaintiff's claims occurred in Ohio. *Supra* III.A. Therefore venue is improper under § 1391(b)(2).

### C. Plaintiff Fails To State a Claim, Because Reeds' Use of "NATO" Refers To The North Atlantic Treaty Organization

A threshold question for a trademark claim is whether the defendant uses the allegedly infringed "mark in a way that identifies the source of [the defendant's] goods." *Hensley*, 579 F.3d at 610 (quoting *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003)). This threshold analysis "focuses on 'whether a consumer is likely to notice the plaintiff's trademark and then think that the defendant's product may be produced by the same company.'" *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429, 432 (6th Cir. 2017) (cleaned up) (quoting *Interactive Prods.*, 326 F.3d at 696). If a defendant is only using a trademark in "a non-trademark way," *i.e.*, for some purpose other than identifying the source of its goods, then "trademark infringement laws, . . . do not even apply." *Hensley*, 579 F.3d at 610 (internal quotations omitted) (citing *Interactive Prods.*, 326 F.3d at 695). The Sixth Circuit has repeatedly affirmed 12(b)(6) dismissal of trademark and state-law unfair competition claims based on non-trademark uses of the allegedly infringed mark.

For example, in *Rupp v. Courier-J., Inc.*, the owner of the "Derby-Pie" mark brought suit against a newspaper that had used "Derby pie" as "shorthand for chocolate nut pie" similar to that sold by the mark owner. 839 F. App'x 1003, 1008 (6th Cir. 2021). The Court said that the defendant's use of "'derby pie' did not 'denote *the* recipe for *the* DERBY-PIE® but *a* recipe for *a* 'Derby pie.'" *Id.* Moreover, the defendant's news articles explicitly stated that the sources of the pie recipes mentioned were companies other than the plaintiff. *Id.* at 1007-08. Therefore, dismissal under Rule 12(b)(6) was appropriate. *Id.*

Similarly, in *Hensley*, the Sixth Circuit affirmed dismissal of a trademark action where the defendant's use of the trademark did "not signify the source of . . . [the] products." 579 F.3d 603, 611 (6th Cir. 2009). There, a designer of trailer hitches, Jim Hensley, founded a company that

took on his name, "Hensley Manufacturing." *Id.* at 607. He later left the company to work for the defendant. *Id.* The defendant truthfully stated that Mr. Hensley had designed its products, and his old company sued. *Id.* at 611. The Sixth Circuit affirmed dismissal of the complaint because the defendant's "advertisements do not use the name 'Hensley' in the trademark sense; they use Jim Hensley's name only to identify him as a designer of trailer hitches." *Id*. at 612.

Likewise, in *Oaklawn*, the defendant operated a computerized betting system that "states the [trademarked horse track] locations at which the races were run." 687 F. App'x at 430. The court said that "[t]he amended complaint pleads no *facts* from which to infer that Defendants are engaging in a trademark use of Plaintiffs' trademarks," except in conclusory form. *Id.* at 433. The defendants were merely stating the location of horse races. *Id.* at 432. Accordingly, the Sixth Circuit affirmed the district court's dismissal. *Id.* at 434.

This case is no different than *Rupp*, *Hensley*, or *Oaklawn*. Just as in *Rupp*, the defendant used the trademark to refer to a type of pie, not the plaintiff's pie. Reeds uses "NATO" to refer to a style of watch, not Plaintiff's watches. Just as in *Hensley*, Reeds "advertisements do not use the name '[NATO] in the trademark sense; they use [NATO's] name only to identify [NATO] as" the inspiration for a style of watches. 579 F.3d at 612. Indeed, the case for dismissal here is even stronger than in *Hensley*, because unlike Jim Hensley, Plaintiff has no connection to the Treaty Organization to which Reeds' advertisement refers. Finally, just as in *Oaklawn* the defendant made a factual reference to the location of a horse race, *see* 687 F. App'x at 433, Reeds' advertisement make a factual reference to the history of a watch style.

Plaintiff has pled no facts to support the inference that any consumer would think Reeds' advertisements refer to Plaintiff rather than the Treaty Organization and NATO-style watches. To

the contrary, the facts pled in the FAC contradict any assertion that Reeds uses "NATO" in a "trademark way."

**First**, Plaintiff cannot dispute that NATO is a well-recognized acronym for the Treaty Organization and that consumers are far more likely to think of the Treaty Organization than Plaintiff when they see the word "NATO." Plaintiff lost on that point and failed to appeal. *See In re Int'l Watchman Inc.*, No. 87302907, 2021 U.S.P.Q.2d 1171, 2021 WL 5755146, at *5-8 (T.T.A.B. Nov. 30, 2021).

**Second**, Plaintiff's allegations regarding Reeds are entirely conclusory, simply stating that Reeds' "conduct has caused confusion, mistake, and deception, and is likely to continue to cause confusion." FAC ¶ 24. Plaintiff offers no explanation of why a consumer would see Reeds' use of "NATO" and think of Plaintiff. That is the type of conclusory allegation courts routinely reject under *Iqbal/Twombly*.

**Third**, the single Reeds advertisement Plaintiff attaches to its FAC clearly shows that "NATO" refers to NATO-style Products, not Plaintiff. *See* Dkt. 5-2. The advertisement identifies that the source of the watches as a well-known watch company, stating that they are "[f]rom OMEGA," not some company called "NATO." *Id.* The advertisement discusses a warranty offered by a specific OMEGA legal entity, OMEGA SA. *Id.*

The advertisement puts "NATO" in quotation marks and refers to "OMEGA's NATO-*inspired* straps," not NATO-brand straps. *Id.* (emphasis added). Nothing in the FAC supports an inference that Plaintiff "inspired" the watches. Even if a consumer did think that Plaintiff, rather than the Treaty Organization, "inspired" the watch, it shows that someone other than Plaintiff is the source of the goods. It would be absurd for Plaintiff to say it "inspired" itself.

Furthermore, the advertisement refers to the straps' "earliest origins to the Second World War," evoking the military origins of NATO-style watches. *Id.* Plaintiff's trademark registration asserts that it first used the NATO mark in 2003, almost sixty years after World War II ended. *See* Dkt. 5-1 (trademark registration certificate listing February 2, 2003 as the date of first use of "NATO"). The suggestion that this advertisement shows any connection with Plaintiff is implausible.

***Finally***, the same analysis applies to Plaintiff's state-law unfair competition claims. *Oaklawn*, 687 F. App'x at 433 (affirming dismissal of state unfair competition claims for failure to allege "trademark use"). Under Ohio law, "[s]imply stating that a defendant … 'causes likelihood of [confusion]' will not do when the actual facts alleged in the Complaint make clear that Defendants were not attempting to identify [the plaintiff] as the source of their own goods and services." *Morris v. Wise*, No. 1:19 CV 2467, 2020 WL 1000010, at *6 (N.D. Ohio Mar. 2, 2020). Thus, Plaintiff's state law claim must be dismissed as well.

## IV. CONCLUSION

For the reasons set forth herein, Reeds respectfully requests that this Court dismiss Plaintiff's complaint for lack of personal jurisdiction and improper venue and/or for failing to state a claim upon which relief could be granted.

| | |
|---|---|
| Dated: March 11, 2024 | Respectfully submitted. |

**MCKOOL SMITH, P.C.**

Alan Whitehurst*
D.C. Bar No. 484873
awhitehurst@McKoolSmith.com
Nicholas Matich*
D.C. Bar No. 1024907
nmatich@McKoolSmith.com
McKool Smith, P.C.
1999 K Street, NW Suite 600
Washington, D.C. 20006
Telephone: (202) 370-8300
Telecopier: (202) 370-8344

/s/ Joseph P. Ashbrook
Joseph P. Ashbrook
Ohio Bar No. 0091279
Ashbrook Byrne Kresge LLC
Post Office Box 8248
Cincinnati, Ohio 45249
Tel: (513) 582-7424
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com

**ATTORNEYS FOR DEFENDANT REEDS JEWELERS, INC.**

*pro hac vice applications forthcoming

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(f), I hereby certify that no track has been assigned to this case. I further certify that the foregoing Memorandum adheres to the page limitations set forth for unassigned cases.

Dated: March 11, 2024                              Respectfully submitted.

**MCKOOL SMITH, P.C.**

Alan Whitehurst*
D.C. Bar No. 484873
awhitehurst@McKoolSmith.com
Nicholas Matich*
D.C. Bar No. 1024907
nmatich@McKoolSmith.com
McKool Smith, P.C.
1999 K Street, NW Suite 600
Washington, D.C. 20006
Telephone: (202) 370-8300
Telecopier: (202) 370-8344

/s/ Joseph P. Ashbrook
Joseph P. Ashbrook
Ohio Bar No. 0091279
Ashbrook Byrne Kresge LLC
Post Office Box 8248
Cincinnati, Ohio 45249
Tel: (513) 582-7424
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com

**ATTORNEYS FOR DEFENDANT REEDS JEWELERS, INC.**

*pro hac vice applications forthcoming